Mr. Chief Justice Sharkey
delivered the opinion of the court.
This bill was filed by the complainants to set aside a sale of real estate, made under the following circumstances. William Scott, the ancestor of complainants, died in Claiborne county, leaving a tract of land, and also some negroes, which descended to his five children, two of whom have since died. Jeremiah Watson was appointed guardian for two of the children, William Briscoe for two, and Thomas Freeland for one. The oldest was near twenty years of age, and the youngest near fifteen. In January, 1829, the legislature passed a law authorizing the guardians to sell the land to pay the debts of the estate, in preference to the personal property. An order was accordingly obtained from the probate court for that purpose, and the land was sold, and Thomas Freeland became the purchaser. There is no objection to the regularity of the sale, nor is there any ingredient of fraud in the transaction. On the contrary the land sold for its full value, and everything was conducted fairly, and for the best interests of the wards, and the money properly applied to its legitimate purposes. Indeed, there is much in the case commendatory of the conduct of the guardians, in their efforts to relieve the estate from embarrassment, and to promote the best interests of their wards. Under this state of facts there can be but two questions; first, was the sale voidable; and second, are the complainants in a condition to set it aside; or, in other words, have they waived their right since they became of age, and thereby ratified the sale.
*418 In regard to the first point, there is no dispute between counsel as to the law; it is consequently unnecessary to enter into a minute investigation of the subject; but as the question is for the first time directly presented, divested of all extraneous circumstances, it may not be amiss to state what is believed to be the true rule in relation to purchases by trustees of the trust estate. An inclination has been manifested ^-some of the English judges, and perhaps by-some of the courts in this country, to look into the transaction when a trustee has purchased the trust property, and to make its validity rest upon its fairness. The decided weight of authority, however, is the other way; the sale may be set aside at the option ef the cestui que trust, as a matter of course. It will be sufficient to refer to the decision of Chancellor Kent, in Davoue v. Fanning, 2 Johns. Ch. R. 252, in which that great jurist entered into a lengthy investigation of the question, by a review of all the authorities. He lays down the rule emphatically, and without qualification, “ that if a trustee, acting for others, sells an estate, and becomes himself interested in the purchase, the cestui que trust is entitled, to come here, as of course, and set aside that purchase, and have the property reexposed to sale.” The same doctrine has been recently announced by the supreme court of the United States, in the case of Michaud v. Girord, 4 How. S. C. R. 503. This is the safest rule; it removes temptation from the trustee. If he is permitted, under any circumstances, to become a purchaser of the trust estate, the deepest frauds may be cloaked under the guise of fairness, and exclude the possibility of proof. In granting relief, however, the court will order the property to be resold, and if it should not bring k higher price on the second sale, then the original sale is confirmed; or the court in its discretion may set aside the sale entirely, if necessary, and order the purchase-money to be refunded. As this sale then was clearly such a one as the heirs could have set aside on coming •of age, it remains to inquire whether they have waived their right, and elected to consider it valid.
This bill was filed on the 19th of October, 1839, ten years after the sale was made. At the time of the sale Robert, the *419 oldest of the children, was nineteen or twenty years old; William was about fifteen, and Thomas, who was the youngest, was about twelve, according to the testimony of Briscoe, who was the guardian of Thomas. At the time this suit was instituted the oldest of the complainants must have been near thirty years of age, and the youngest twenty-two. After they became of age, their guardians settled with them, and paid to each his share of his father’s estate. The heirs were present at the sale, and have been fully cognizant of the fact ever since. There has been no express ratification of the sale, but the foregoing circumstances are relied on as showing the assent of the heirs to the purchase of Freeland. It is not necessary that thereof should be an express assent to the purchase, it is often implied 1 from circumstances, one of the strongest of which is. a failure , to take immediate steps, on coming of age, to have the sale set aside, provided the party know of it. The cestui que trust may ; elect to treat the sale as valid if he will, and such election will be implied from any unre_asonable delay in taking steps to set it aside. If he should desire to have it set aside, the law requires that at least a reasonable degree of vigilance should be adopted. To lay down any precise rule on this subject is impossible, in the nature of things; each case must be governed by its own peculiar circumstances./ Supposing these complainants to have been adults at the time of sale, the lapse of time between that and the filing of the bill would undoubtedly be regarded as a confirmation. In regard to the contract of an infant, which is voidable, Chancellor Kent says, a confirmation may be justly inferred against him after he has been of age for a reasonable time, either from his positive acts in favor of the contract, or from his tacit assent under circumstances not to/'" excuse his silence. 2 Kent’s Com. 238. With regard to the oldest of the complainants the delay has been so great as to imply an affirmance. It was his duty to have manifested ’his dissent at an earlier day, and so with the next oldest. It is not like the case of a positive bar from a statute of limitations which would only commence to run when the youngest became of age. It was competent for the elder heirs to have filed their *420 bill before the youngest became of age, and their neglect to do so must operate against their pretensions. But even as to the youngest, there was a want of vigilance, which, under the circumstances, must operate to his prejudice.
But, in addition to the length of time which intervened from the majority of the parties to the filing of the bill, there is another circumstance entitled to even more weight. After arriving at full age they all received from their guardian the product of this sale, either in money, or, which is the same thing, in property which had been protected and saved by the money arising from the sale. The proof is, that the estate was in debt about six thousand dollars; the land sold for over eight thousand; and by the sale of the land the negroes were saved. And they received their distributive share with a full knowledge of what had been done; and at a time when they were capable of judging whether the sale had been beneficial to them or not. Such settlements are usually regarded as an affirmance of the purchase of trust property by the guardian. This must be the result. If, after coming of age, they agreed to receive, and did receive the value of the property, instead of the property itself, it was a valid and binding contract, assuming that they did so with a full knowledge of their rights. In Caplinger v. Stokes, Meigs’s R. 175, a similar settlement between a guardian and his ward, made shortly after the latter became of age, was held to vest the trust property in the guardian. This, in the language of Chancellor Kent, is a positive act in favor of the contract. It is true that the reception of a distributive share by one who has just become of age, ought not to be construed too strongly against him. It is to be viewed with great allowance, and ought not to operate to his prejudice when it is obvious that he acted without due precaution, if immediate steps are taken to correct the.matter. But when parties after such a settlement have remained passive so long, it is hard to resist the conclusion of acquiescence. As to the two oldest of these complainants, they are clearly estopped by the delay as well as by their contract. The contract they made when they became of age *421 was a valid one, and it cannot be set aside unless the heir can make some showing that his assent to it was procured by mistake of his rights, or by the fraud or deception of the opposite party.
The decree must be affirmed.